# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ZONGZONG (NICOLE) TAO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-1463 |
| | ) | |
| v. | ) | Hon. Jeffrey I. Cummings |
| | ) | |
| SIMPLEX INVESTMENTS, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SIMPLEX'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Nicole Tao ("Plaintiff" or "Tao") has failed to come forward with any evidence that she was discriminated against because she is a Chinese-born Asian woman. She has failed to state a *prima facie* case of discrimination under either Title VII or the Illinois Human Rights Act ("IHRA"). In contrast, Simplex has provided undisputed evidence that Tao was terminated because of her poor work performance and that Simplex leadership lost confidence in her ability to perform her job duties. Tao made multiple significant mistakes that cost Simplex money. She was terminated for her overall poor performance and mistakes, including a significant mistake related to her management of the Spread Auction Trader ("SAT") strategy. In short, Simplex management decided it could no longer trust Tao's work.

Tao has no evidence of discrimination. As a result, she has resorted to denying that she made any mistakes and claiming that: (1) any mistakes were not her fault, (2) everyone else made mistakes so mistakes are no big deal, and (3) she was treated unfairly when she was terminated after making several mistakes, including one that cost $1 million. The evidence makes clear that she was counseled about the various mistakes she made; of course, she also denies that happened. Her desperation has led her to question how Simplex runs its business, how it handles

human resources matters, and under what circumstances it has counseled or terminated or not terminated virtually every other trader over the years. She hired an "expert" to say Simplex's business operations are not "standard" in the industry. As has been made clear, her expert does not have the knowledge on which to base these opinions. The real reason she retained her expert was so he could opine that her $1 million mistake was not her fault even though Simplex's conclusion that her work could no longer be trusted was based on the totality of her work. Obviously, these opinions have no bearing on the outcome of the case. Simplex's business model is not at issue in this discrimination case. Further, neither Tao's nor her expert's opinion on whether the error was her fault can save her case. There is no evidence of unlawful discrimination. CEO Erik Swanson and Head of Trading Matt Zimmerman honestly believed her overall performance warranted termination. The law is clear: Tao and her expert cannot act as a "super personnel department" under such circumstances, and neither can this Court.

Glaringly absent from Tao's presentation is any discussion that Simplex terminated seven Caucasian male traders over the years for poor performance. This fact alone should end her case. What is abundantly obvious is that Simplex made employment decisions based on employee performance and not any improper basis.

Desperate to save her case, Tao has disputed nearly every material fact Simplex[1] presented, even the many for which her sworn deposition testimony shows there is no actual dispute, and has presented an assortment of immaterial additional "facts" with the hope that she can muddy the

---

[1] On June 14, 2024, Tao voluntarily dismissed Counts VI (Title VII hostile work environment), VII (Title VII retaliation), VIII (IHRA retaliation), IX (§ 1981 discrimination and hostile work environment), and X (§ 1981 retaliation). Plaintiff has thus dismissed all claims against Defendants Erik Swanson and Matt Zimmerman. As a result, this reply is filed solely by Simplex. Although Tao did not specifically move to withdraw Count III, her Equal Pay Act claim, she has waived that claim, as she did not once reference it in her response to Defendants' motion for summary judgment. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

waters enough to survive summary judgment. The Court should not be fooled, as the material facts and law are clear and they merit dismissal of Tao's claims with prejudice.

Tao invited Swanson and Zimmerman to her home for her birthday party, ate on multiple occasions at Swanson's restaurant, participated in office pranks with her coworkers, and told Simplex's Chief Compliance Officer that she "absolutely love[d]" working at Simplex and that it was one of the best places she ever worked. Dkt. 81 ¶¶ 60-61. Tao did not claim that her race, sex, or national origin played any role in her employment with Simplex during the five-plus years she worked there. Only after Simplex terminated her employment in February 2021 for her overall poor performance, including her significant SAT error, did Tao first claim that her race, sex, and national origin were the reasons for her termination.

Since her termination, Tao has spent over three years litigating against Simplex, Swanson, and Zimmerman claiming they: (1) terminated her to avoid paying her a bonus; (2) harassed her based on her sex, race, and national origin; (3) retaliated against her for claiming harassment; (4) violated the Equal Pay Act; (5) violated § 1981 by discriminating against her; and (6) discriminated against her in violation of Title VII and the IHRA because of her race, sex, and national origin.

Tao has thrown everything she could think of against the wall to see what would stick. Her state court wage lawsuit and state court appeal failed. Her Illinois Department of Human Rights charge failed. In this lawsuit, Tao took nine depositions and Simplex produced approximately half a million pages of documents before Tao abandoned her claims against Swanson and Zimmerman and five claims against Simplex. All that is left are her Title VII and IHRA race, sex, and national origin discrimination claims against Simplex. Now it is time to dismiss those claims as well.

## ARGUMENT

**I. Tao's Sex, Race, and National Origin Disability Claims Fail as a Matter of Law.**

    **A. Tao Was Not Meeting Simplex's Expectations at the Time of Her Termination.**

        **1. Tao's Performance Caused Simplex to Lose Faith in Her Work.**

Tao cannot establish that she was meeting Simplex's expectations at the time of her termination. As a result, she cannot establish her *prima facie* case, and summary judgment should be granted. As discussed in Defendants' opening brief, Tao allowed an error to persist in SAT, a strategy for which she was responsible, for 107 trading days between August 2020 and January 2021, costing Simplex over $1 million. Dkt. 81 ¶¶ 35, 39-40. Swanson and Zimmerman had previously counseled Tao about her performance and specifically about her attention to detail, including addressing errors during her 2019 and 2020 performance reviews and throughout 2020. Dkt. 81 ¶¶ 19, 22, 28, 30, 41.

Following the discovery of Tao's SAT error by developer Matt Eubank, Zimmerman decided to review Tao's other work and discovered several other errors. Dkt. 81 ¶ 41. What Zimmerman found led him and Swanson to conclude that Tao could not be a valuable contributor going forward. *Id*. *See Arrasheed v. Bd. of Educ.*, No. 19-cv-7614, 2022 U.S. Dist. LEXIS 223209, at *30-31 (N.D. Ill. Dec. 12, 2022) (summary judgment to employer where the "record is chock full of instances" of plaintiff's performance failures and plaintiff could not establish that he was meeting his employer's legitimate expectations)[2]; *Mehrberg v. Ill. Dep't of Commerce & Econ. Opportunity*, No. 18-cv-02032, 2022 U.S. Dist. LEXIS 686, at *11-15 (N.D. Ill. Jan. 3, 2022) (summary judgment granted to employer where plaintiff's "work product was lacking").

---

[2] Tao claims *Arrasheed* is distinguishable because the plaintiff had written job responsibilities and Tao did not. Dkt. 98, PageID 1315, n.7. But nowhere in the court's analysis of the plaintiff's failure to perform satisfactorily are written responsibilities referenced as central to the court's holding. *Arrasheed*, 2022 U.S. Dist. LEXIS 223209, at *29-31.

Tao claims she was not responsible for the SAT error because it was solely a developer's fault. Dkt. 98 PageID 1323. The theme that errors are *other people's fault* and not hers is repeated throughout Tao's position in this litigation. Simplex's investigation, however, found Tao to be at fault. Dkt. 81, ¶¶ 34-39. Tao may argue that Simplex's conclusion is incorrect. However, as discussed below, this argument is merely Tao playing "super-personnel" department, a position soundly rejected over and over in this Circuit. Moreover, "[a] plaintiff's 'own opinion about his work performance is irrelevant' and doesn't create a fact issue." *Robertson v. Lofton*, No. 13 C 3205, 2018 U.S. Dist. LEXIS 53687, at *12 (N.D. Ill. Mar. 30, 2018), quoting *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 897 (7th Cir. 2015). The bottom line is that Tao was careless and inattentive in performing her job.

### 2. Tao's Performance in Previous Years is Irrelevant.

Tao states that she received performance bonuses from 2015 through 2019 and claims this "history of strong performance" creates a question of fact as to whether her performance was satisfactory in 2020. Dkt. 98 PageID 1312. Tao relies on the *Wohl* and *Johnson* cases from the 1990s. *Id.* PageID 1312-13. These cases have no relevance here. Neither *Wohl* nor *Johnson* addresses a fact pattern in which an employer discovered incidents of poor performance *after* providing a satisfactory performance review. Simplex did not learn of Tao's SAT failures until January 2021, so its evaluation of her performance in 2015 through 2019, and even in late 2020, *before* it learned of her SAT errors and conducted a quality review of her work, was not relevant because Simplex's understanding of her performance changed in January 2021.

Moreover, significantly more recent case law has made clear that the Court looks at an employee's performance *at the time of termination*, not at past performance. "[P]rior positive performance reviews … do not create a genuine issue of fact that she was meeting work

expectations '*at the time of* [her] termination.'" *Mehrberg*, 2022 U.S. Dist. LEXIS 686, at *15-16 (emphasis in original), quoting *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010). Plaintiff simply cannot prove she was performing her job satisfactorily in 2020 or 2021 by pointing to bonuses she received years before. Previous satisfactory performance does not guarantee continued satisfactory performance, and Tao cannot wish away her performance deficiencies by pointing to evaluations *before* her superiors discovered her performance problems. If anything, Tao's prior bonuses and positive reviews demonstrate that her sex, race, and national origin had no impact on decisions concerning her employment.

Tao's previous bonuses are her only "evidence" that her performance was satisfactory in the past. But, for Tao, this is a double-edged sword. If receipt of past bonuses is evidence of past satisfactory performance, then by Tao's own logic, her failure to receive a performance bonus for 2020 is evidence that she was *not* performing satisfactorily at the time of her termination.

### 3. Tao's Claim That None of Her Performance Issues Were Documented is False.

Tao next argues that Simplex has "not produced a single document to substantiate" its contention that it counseled Tao on multiple occasions about her performance and attention to detail. Dkt. 98 PageID 1313. This is false. Simplex produced multiple contemporaneous written accounts of Tao's performance shortcomings (Dkt. 81 ¶¶ 22-27, 31-33, 37-41), and Tao even admits that Zimmerman provided her oral feedback on multiple occasions and detailed her errors related to DASH during her 2019 performance review. Dkt. 101 ¶¶ 19, 28.

Tao cites *Wohl* and *Nichols* to argue that an employer's failure to keep records of performance issues creates an issue of fact as to her performance. Dkt. 98 PageID 1313. However, as discussed above, Simplex has produced several documents that contemporaneously demonstrated that she performed unacceptably. Dkt. 81 ¶¶ 22-27, 31-33, 37-41. Tao naturally takes

6

issue with these documents, does not approve of their form, denies all wrongdoing, or blames others. If Simplex had different documents such as formal written disciplinary documents, Tao would undoubtedly deny their validity and seek to find fault in them too. This is a large part of Tao's problem – she has never accepted *any* responsibility for her poor performance. *See* Dkt. 81 ¶¶ 28, 40. However, Tao's systemic denial of any wrongdoing at any point is insufficient to survive summary judgment, especially where Simplex has introduced evidence that Tao repeatedly made mistakes and Swanson and Zimmerman lost faith in her ability to perform her job.

### 4. Tao Cannot Play "Super-Personnel Department."

Tao claims Simplex cannot use her errors with SAT (which she has falsely branded as a "Developer Coder Error" to assign blame elsewhere) as evidence that she did not meet Simplex's legitimate expectations for two reasons: (1) she allegedly had "excellent" performance in the past and (2) the error was allegedly not her fault. Dkt. 98 PageID 1314. These tired arguments fail.

First, as discussed above, Tao's performance in previous years is irrelevant. *Mehrberg*, 2022 U.S. Dist. LEXIS 686, at *15-16. Second, Tao cannot survive summary judgment by claiming the SAT error was not her fault. Swanson and Zimmerman investigated the mistake and concluded it was Tao's responsibility to monitor SAT and discover and address problems with the strategy. Dkt. 81 ¶¶ 34-39. It does not matter whether Tao disagrees with Swanson and Zimmerman's conclusion. As the Seventh Circuit recently held, "[w]e have said time and again (in more than one hundred reported opinions, by our count) that we are not a super-personnel department that will substitute our criteria for an employer's for hiring, promoting, or disciplining employees." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 898 (7th Cir. 2023), quoting *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 933 (7th Cir. 2020). Swanson and Zimmerman testified that Tao did not perform her duties to monitor and correct problems with SAT. This means

she did not meet expectations. Tao may disagree with this conclusion or that the failure was her fault, but her opinion does not matter. Even the *Wohl* case that Tao repeatedly cites states that "simply shifting the blame for a problem" is insufficient to survive summary judgment. *Wohl v. Spectrum Mfg.*, 94 F.3d 353, 357 (7th Cir. 1996).

### B. No Similarly-Situated Employee Was Treated More Favorably.

Broadly speaking, there are two groups of traders involved in this case. Both groups are composed primarily of white males. The only distinction between the two groups is that one group was terminated based on performance, whereas the other group remains employed. Tao cannot establish her *prima facie* case because she has not proven that any similarly-situated employee outside her protected classes was treated more favorably.

#### 1. Simplex Terminated White Male Traders for Poor Performance.

Plaintiff's narrative that she was the only trader whose employment was terminated for poor performance is false. Simplex terminated seven white male traders for poor performance without providing them with any warnings. Daniel Baldwin, James Kanak, James Kracaw, and John Kracaw were all terminated for poor performance between 2017 and 2019. Dkt. 81 ¶ 46. Additionally, white male trader Alex Zeltser resigned on February 18, 2017 in the same meeting his employment was to be terminated for poor performance. *Id*. More recently, two white male traders, Alexander Hathcock and Andrew Moore, were terminated for poor performance. *Id*.

Tao claims in a footnote that these traders (she does not specify which traders she is referring to other than "other male traders") do not count because they were not algorithmic traders. Dkt. 98 PageID 1317, n.8. Tao has waived this argument. "In the Seventh Circuit, arguments raised only 'by a passing reference in a footnote' are deemed waived." *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 642 (N.D. Ill. 2022), quoting *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989); *see also Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 848 F.3d 822,

829 (7th Cir. 2017) (a party waives an argument by presenting it as an undeveloped footnote).

Moreover, even if not waived, Tao's attempt to distinguish these traders in this manner fails. These white male traders reported to the same supervisor as Tao. Zeltser, Hathcock, and Moore held exactly the same position Tao did. Swanson Dep.[3] p. 212, lines 12-13; Zimmerman 2nd Dep.[4] p. 31, line 17 – p. 33, line 1. They performed poorly, just as Tao did. They were subject to the same standards as Tao – they were traders who were expected to make money and to perform excellently. Their employment was terminated just like Tao's was. Tao herself said these are the only factors necessary to establish that an employee is similarly situated, and that the inquiry should "not devolve into a mechanical, one-to-one mapping between employees." Dkt. 98 PageID 1315, quoting *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022). Tao relied on this case to state that employees were similarly situated, despite differences between them. *Id*. PageID 1320.

Tao's argument is another double-edged sword. She cannot broaden the definition of "similarly situated" when it benefits her but narrow it when it hurts her. She cannot reject that these poorly-performing white male traders who worked for the same company and the same supervisor were comparators simply because some of them had different titles – both Tao and the terminated white male traders failed to perform up to standards and were terminated by the same decision maker. The terminated white male traders were similarly situated by Tao's own logic.

        **2.      The Remaining White Male Traders Did Not Make Errors Like Tao's.**

The second group of traders are those who Tao claims made mistakes but were not terminated. Tao's focus on this group is misplaced and desperate. Tao attempts to make this group of traders relevant by recounting in granular detail a litany of alleged performance failings by

---

[3] Pages of Erik Swanson's deposition that are cited for the first time on reply are attached as Exhibit 1.
[4] Pages of Matt Zimmerman's second deposition that are cited for the first time on reply are attached as Exhibit 2.

9

them, even one that was caught in five minutes. Meyer Dep.[5] page 92, lines 14 – 17.

Tao's employment was terminated because her supervisors lost faith in her ability to perform up to Simplex's standards. Dkt. 81 ¶¶ 41, 42. Tao has not identified any other trader whose performance merited a similar conclusion. Zimmerman is unaware of any other trader, regardless of sex, race, or national origin, who showed the lack of understanding that Tao did and was not terminated. Dkt. 81 ¶ 47. Zimmerman is also unaware of any other trader, regardless of sex, race, or national origin, who failed to detect an error in their strategy for five months and whose strategy had an error of the magnitude of Tao's and that had to be pointed out by a third party. *Id*.

Tao claims Dave Harrison made errors that lost Simplex money. Dkt. 98 PageID 1318. As stated in Simplex's opening brief and statement of facts, Tao has no evidence to prove that Harrison's alleged error was on the same scale as her errors were, that Harrison failed to find and correct his alleged error, or how much his alleged error cost Simplex. Dkt. 81 ¶ 45. Significantly, Swanson (Harrison's supervisor) is unaware of Harrison making any error of the magnitude of Tao's errors, so he could not have disciplined Harrison for allegedly committing such error(s). *Id*.

Tao claims Colin Batko testified that he had several coding errors, including one that ran for several months. Dkt. 98 PageID 1318. Notably, during her deposition Tao could not identify Batko as someone who made errors. Dkt. 81 ¶ 45. Tao has produced no evidence that Swanson or Zimmerman was aware of Batko having a coding error that ran for several months. Dkt 99 ¶ 27.

Tao claims Dimitry Braznichenko had a coding error and that he was not the one to discover it. Dkt. 98 PageID 1318. However, the evidence does not support that Braznichenko similarly had an error, that he failed to correct it, and that Swanson and Zimmerman were aware of it. Tao's counsel asked Zimmerman about Braznichenko's alleged error during Zimmerman's deposition,

---

[5] Pages of Alex Meyer's second deposition that are cited for the first time on reply are attached as Exhibit 3.

and Zimmerman responded that both Tao and Braznichenko had supervision over the strategy in question at various points. Zimmerman Dep.[6] page 180, line 17 – page 182, line 3. Notably, Tao's counsel did not ask Zimmerman whether Braznichenko was in charge of the strategy when any alleged error was made; he merely asked whether Braznichenko had "some involvement in" the strategy. *Id*, page 180, lines 14-16. Tao has produced no evidence that Swanson was aware of any error at all. Dkt. 99 ¶ 30. Tao is relying on vague, generalized allegations, indirect testimony, and speculation to claim that Braznichenko engaged in conduct similar to hers.

Tao claims Rich Yoon made errors that were discovered by other traders, including one that ran for months.[7] Dkt. 98 PageID 1318. That claim is wrong. First, Tao's supporting evidence indicates that Yoon made one error, not multiple errors like Tao made. Dkt. 99 ¶ 28. Moreover, Zimmerman testified that Yoon's error did not last for nine months (as Tao argues) and that the "nine months" terminology was part of the trading strategy, referring to the option expiration date, not the length of time the error was in place. Zimmerman Dep. page 177, line 24 – page 178, line 10. Again, there is no evidence that Swanson was aware of any error at all. Dkt. 99 ¶ 28.

Tao claims Luke Potter had trading strategies with errors that were discovered by other traders. Dkt. 98 PageID 1318-19. However, Tao has produced no evidence that either Swanson or Zimmerman was aware of such errors. Dkt. 99 ¶ 29.

Tao claims Zimmerman made errors before being promoted to Head of Trading. Dkt. 98 PageID 1319. Notably, Zimmerman was promoted to Head of Trading in February 2019 – two full years before Tao's termination – so any errors he allegedly made were years before Tao's termination. Dkt. 81 ¶ 3. Moreover, Zimmerman reported to a different supervisor than Tao. It is

---

[6] Pages of Matt Zimmerman's deposition that are cited for the first time on reply are attached as Exhibit 4.
[7] Significantly, Yoon is Asian. That Simplex did *not* terminate Yoon for alleged errors undercuts Tao's race discrimination claim.

11

undisputed that Zimmerman supervised Tao, but he obviously did not supervise himself before he became Head of Trading. "In a case challenging disciplinary action, the plaintiff and comparator ordinarily must have dealt with the same supervisor …" *Lesiv v. Illinois Central R.R. Co.*, 39 F.4th 903, 919 (7th Cir. 2022). Moreover, "the Seventh Circuit has held that absent extraordinary circumstances, a plaintiff's supervisors are not proper comparators in disparate discipline cases." *Jordan v. Evans*, No. 15 C 5907, 2019 U.S. Dist. LEXIS 153559, at *13 (N.D. Ill. Sep. 9, 2019).

There simply is no proof that these white male traders were similarly situated to her and were treated more favorably. What the evidence shows is that Simplex only considers an individual's performance as the basis on which employment decisions are made.

    **C.**    **Simplex Has Legitimate, Nondiscriminatory Reasons for Its Actions and Tao Cannot Prove Pretext.**

Tao failed to prove her *prima facie* case, so no further inquiry is necessary. However, assuming that Tao could establish her *prima facie* case, Simplex has legitimate, nondiscriminatory reasons for its actions. Tao's pattern of mistakes led Swanson and Zimmerman to lose faith in her ability to add value to the enterprise, resulting in her termination. Tao's many mistakes cost Simplex over $1 million. Tao cannot establish that Defendants' reasons are pretextual.

    **1.**    **Tao Repeatedly Plays "Super-Personnel Department."**

In support of her pretext argument, Tao repeatedly plays super-personnel department. It is the main thrust of her argument. She claims, for example:

- It was actually a developer and not she who made and perpetuated a serious mistake with SAT [Dkt. 98, PageID 1308-09, 1323];

- She should not have been terminated because she had made money for Simplex [*Id.* PageID 1312, 1322-23];

- *She* believed her performance was excellent [*Id.* PageID 1312, 1314, 1322-23];

- Written criteria to judge employee performance issues "should have been implemented" [*Id.* PageID 1317]; and

- Simplex should have done more to quantify the harm of her Spread Auction Trader failure and to document her poor performance before terminating her employment. *Id.* PageID 1313, 1322.

Essentially, she claims Swanson and Zimmerman should have evaluated her performance differently, judged her less harshly, determined that it was a developer and not Tao who made serious mistakes with SAT, and generally made different business decisions. As discussed above, this is an inappropriate line of argument, and it is not the Court's purpose to substitute its business judgment for Simplex's. *Kluge*, 64 F.4th at 898, quoting *Joll*, 953 F.3d at 933. Swanson and Zimmerman concluded that Tao was responsible for the SAT error and several other errors, and they lost confidence in her ability to succeed. Whether they were mistaken, whether the blame actually should be placed elsewhere, or whether they should have drawn different conclusions is not Tao's or the Court's place to decide.[8]

### 2. Tao Relies on Irrelevant and Misleading Arguments to Claim Pretext.

Tao's remaining pretext claims should be disregarded. She claims her employment was terminated just one day before performance bonuses were announced. Dkt. 98, PageID 1308, 1322-23. If Simplex terminated Tao's employment for the purpose of saving money on paying her bonus, then this case is over because frugality is distinct from discrimination. Moreover, Tao already sued Simplex over her bonus in state court, and her case was dismissed on a motion to dismiss and affirmed on appeal. *Tao v. Simplex Investments, LLC*, No. 21 L 3870 (Cook County Jul. 28, 2021); *Tao v. Simplex Investments, LLC*, 2022 IL App. (1st) 211040-U.

Tao also claims her supervisors consulted with Simplex's Human Resources Director about her but never did so when other traders allegedly performed poorly. Dkt. 98, PageID 1323.

---

[8] Tao has hired an "expert" whose main opinion is that Tao is not at fault for the SAT error and that Simplex should generally operate its business differently. For reasons stated in Simplex's motion to exclude expert testimony, Dkt. 84, 85, and 106, this "expert's" opinion carries no weight and should be ignored.

Simplex has a Human Resources department, and Swanson and Zimmerman were allowed to consult with its director when they desired. Consultation with HR certainly indicates that Tao's error was a significant event. Tao cannot point to a single case in which speaking with a Human Resources Director amounted to evidence of pretext. If they did not consult with Human Resources regarding Tao's mistakes, Tao certainly would have complained about that, too.

Tao further claims her employment was terminated after she told Zimmerman she was undergoing fertility treatment. *Id.* PageID 1322-23. However, her termination occurred over two months later – after several major errors in her performance were discovered – and Plaintiff offers nothing more than speculation to show any connection between her treatment and her termination. "[A] speculative inference does not an employment discrimination case make." *Igaski v. Ill. Dep't of Fin. Prof'l Reg.*, 988 F.3d 948, 961 (7th Cir. 2021). Moreover, Simplex pointed out that several employees (both male and female) had taken parental leave consistent with Simplex's policy, that no one said anything negative about Tao's treatment, and Swanson did not even know about Tao's fertility treatment. Dkt. 81 ¶¶ 51-52.[9]

## II. Tao Has Not Mitigated Her Damages.

Tao has not established that she mitigated her damages. As she admits, she must show an "honest, good faith effort" to mitigate. Dkt. 98, PageID 1324, quoting *Smith v. Great Am. Rests.*, 969 F.2d 430, 438 (7th Cir. 1991). Tao did not do so. She testified that she made an *active* decision not to seek equivalent work and did not seek a job, despite knowing of several firms that hired traders and despite positions being available, and even though some firms reached out to her

---

[9] In dismissing Tao's charge for lack of substantial evidence, the Illinois Department of Human Rights found Simplex "discharged [Plaintiff] for poor performance. [Plaintiff] did not identify and the investigation did not reveal, any non-Asian, male or non-pregnant employee who engaged in similar conduct as [Plaintiff] but was not discharged. Evidence shows that [Simplex] has discharged non-Asian male and non-pregnant employees for violations of their policies. [Plaintiff] has failed to establish a prima facie case of race, sex, or pregnancy-based discrimination." Dkt. 81, ¶ 66 (Plf. Dep. Ex. 8, p. 9).

14

directly. Dkt. 81 ¶¶ 68-71. Instead, Tao "managed" her personal investments, even though her millions of dollars in the investment accounts were managed full-time by JP Morgan Chase. Dkt. 81 ¶ 72. She cared for her young son, even though she had not one but two full-time live-in nannies. *Id.* These activities do not satisfy the mitigation requirement.

Tao cites *Smith*, where the plaintiff was found to have mitigated after opening her own restaurant instead of seeking another restaurant job. Dkt. 98, PageID 1324. This is not analogous. Tao did not start her own trading company. She did not take on extra work. If the *Smith* plaintiff had stayed home and paid someone to start a restaurant on her behalf, the case would be analogous, and it likely would have had a different holding.

## CONCLUSION

For the foregoing reasons and the reasons stated in its opening brief and statement of facts, Simplex respectfully requests that the Court grant summary judgment in its favor, dismiss Tao's remaining claims with prejudice, and grant Simplex such other relief as the Court deems appropriate.

Dated: August 7, 2024                                  Respectfully Submitted,

*/s/ David B. Ritter*
David B. Ritter
Brian W. Lewis
Catherine Paige Lohse
Douglas M. Oldham
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 214-4582
Fax: (312) 759-5646
david.ritter@btlaw.com
brian.lewis@btlaw.com
paige.lohse@btlaw.com
douglas.oldham@btlaw.com

*Attorneys for Simplex*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 7, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF filing system, which will send notification of this filing to all counsel of record.

*/s/ David B. Ritter*
