IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZONGZONG (NICOLE) TAO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22-cv-1463 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| SIMPLEX INVESTMENTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Zongzong (Nicole) Tao ("Tao"), a Chinese-American woman, brings this action against her former employer Simplex Investments, LLC ("Simplex") following her termination, alleging gender and race/national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2 *et seq*.[1]

Before the Court is Simplex's motion for summary judgment, (Dckt. #79), in which it argues that Tao cannot make out a prima facie case of discrimination because she cannot establish that she performed her job according to Simplex's legitimate expectations or that Simplex treated similarly situated male, non-Chinese employees more favorably. Simplex further argues that even if Tao could establish her prima facie case, it had a legitimate, nondiscriminatory reason for terminating her (namely, poor performance), such that Tao cannot

---

[1] Tao's initial complaint also included claims against Simplex and two of its employees, Erik Swanson and Matt Zimmerman, for hostile work environment, retaliation, and violations of the Equal Pay Act. (*See* Dckt. #1-1). After defendants moved for summary judgment, Tao sought leave to file an amended complaint, explaining that she intended to "proceed solely on her discrimination counts." (Dckt. #97 at 1). The Court granted Tao's motion, (Dckt. #102), and Tao filed her amended complaint on June 19, 2024, withdrawing her hostile work environment, retaliation, and Equal Pay Act claims. (Dckt. #103). Thus, only her discrimination claims remain at issue. (*Id.*).

prove its reason was merely pretext for discrimination. Tao opposes Simplex's motion, arguing that she has put forth sufficient evidence to raise material questions of fact as to whether she has made a prima facie case of discrimination, and whether Simplex's proffered reason for her termination was pretextual.

For the reasons set forth below, the Court finds that Tao has failed to offer sufficient evidence to create a genuine issue of material fact as to whether she can establish a prima facie case of discrimination. The Court further finds that even if Tao had made out her prima facie case, she has not put forth sufficient evidence which raises a genuine issue of material fact as to whether Simplex's provided reason for firing her was pretextual. The Court therefore grants Simplex's motion for summary judgment. (Dckt. #79).

## II.     LEGAL STANDARD

### A.      Standard for Summary Judgment

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact).

When the moving party has met its burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present

the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. Of course, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [s]he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

**B.    Requirements of Local Rule 56.1**

Northern District of Illinois Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this District. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). To this end, Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). In turn, Local Rule 56.1(d) provides that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. LR 56.1(d)(2).

3

The non-moving party must then respond to the movant's statement of material facts. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). The response must consist of numbered paragraphs corresponding to the numbered paragraphs in the moving party's Local Rule 56.1 statement, and each response "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(1)-(2). "A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). Instead, if the opposing party wishes to assert facts not set forth in the moving party's Local Rule 56.1 statement, it may submit a statement of no more than forty additional material facts, which also must comply with Local Rule 56.1(d). LR 56.1(d)(2), (5). If a party fails to respond to the Rule 56.1 statement of material facts, those facts may be deemed admitted to the extent they are supported by the evidence in the record. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); LR 56.1(e)(3).

Here, Tao often "disputes" certain facts set forth in Simplex's Local Rule 56.1 statement, but her responses simply, and improperly, set forth new facts that do not dispute the specific facts that Simplex asserts. For example, Tao attempts to dispute Simplex's fact that one of Tao's supervisors viewed her performance as "solid," (Dckt. #81 ¶13), by adding that she received a year-end bonus for the years 2015 to 2019 and was on track to receive a bonus in 2020, (Dckt. #101 ¶13). These "new" facts do not properly dispute Simplex's factual assertion that her performance was solid per her supervisors. Moreover, Tao's response to Simplex's Local Rule 56.1 statement is not the proper place to introduce such new facts. Again, if the non-movant wishes to assert new facts, they must do so in a statement of additional facts, but not a Local

Rule 56.1(e) response or brief. LR 56.1(b)(3). In these instances, where Tao has not properly disputed Simplex's facts, they will be deemed admitted.

Simplex also argues that Tao improperly "packed" each paragraph in her statement of additional facts with multiple facts in violation of LR 56.1(d)(1). (Dckt. #108 at 1); LR 56.1(d)(1) (explaining a statement of additional facts must "consist of concise numbered paragraphs."). While Tao's additional facts are often over half a page long, and in some instances, over one page long, "[t]here is no categorical prohibition of paragraphs containing multiple sentences or multiple facts," *Jackson v. City of Chi.*, No. 20 C 5886, 2024 WL 1142015, at *2 n.1 (Mar. 15, 2024), and Simplex was able to respond to Tao's statement of additional facts. (Dckt. #108). To the extent plaintiff "packed" several facts into each paragraph to circumvent the Local Rule's limitation to forty additional facts, the Court does not condone Tao's conduct. LR 56.1(d)(5). Nevertheless, this Court prefers to decide the case on the merits; therefore, it will consider all of her properly proffered facts in its disposition of the present motion.

## II. FACTUAL RECORD

The Court draws the factual record from the parties' pleadings; Simplex's statement of material facts ("DSOF") and its accompanying exhibits, (Dckt. ##81–83); plaintiff's response to DSOF, ("DSOF Resp."), (Dckt. #101); plaintiff's statement of additional facts ("PSAF") and its accompanying exhibits, (Dckt. #99 to #99-11); and Simplex's response to PSAF ("PSAF Resp.") and its accompanying exhibits, (Dckt. ##108 to 108-12). The following facts are undisputed unless otherwise noted:

### A. Tao's Role at Simplex

Tao is a Chinese-born woman who became a naturalized citizen of the United States when she was sixteen. (DSOF Resp. ¶11). She graduated from the University of Chicago in

2008 with a bachelor's degree in economics, (PSAF Resp. ¶1), and, relevant to this dispute, began working for Simplex as an algorithmic trader on January 5, 2015, (*id.*). At the time of Tao's hire, Simplex employed approximately ten traders, none of whom were female. (DSOF Resp. ¶4).

Traders, like Tao, were tasked with developing new trading strategies or improving existing trading strategies. (*Id.* ¶7). Regardless of whether a strategy was a new strategy or an existing one, it was improved over time through a collaborative process between Simplex's traders and its developers. (*Id.* ¶6). First, the algorithmic traders would develop a set of logic to create a new strategy or improve an existing strategy. (*Id.*). The traders would then provide that logic to a developer, who would write it into code. (*Id.*). Changes to the code were maintained and published in a format that the traders could review. (*Id.*). Tao was "not formally trained in coding," and testified that traders worked as a team, such that no individual trader was responsible for any one trading strategy. (PSAF Resp. ¶1).

**B.      Tao's Historical Performance at Simplex Between 2015–2019**

At the time relevant to this dispute, traders at Simplex were managed by "a combination, one or both" of Matthew Zimmerman ("Zimmerman") and Erik Swanson ("Swanson"). (DSOF ¶3). Starting in 2019, Tao specifically was supervised by Zimmerman. (*Id.*); (Dckt. #99-1 at 8). Like other workplaces, Simplex held annual reviews and had regular check-ins with its traders. (DSOF Resp. ¶10). Moreover, those reviews and check-ins were oral and were generally not documented. (*Id.*). Traders were awarded annual bonuses when they "fulfilled the duties of their job at a level that was up to [Simplex's] standards." (Dckt. #99-1 at 111). Swanson, who conducted Tao's reviews from 2015 to 2018, described her performance as "solid," (DSOF Resp. ¶13), but recalled concerns about attention to detail and speed of work that came up over the

6

same period. (Dckt. #99-1 at 103). Despite these generalized concerns, Tao received a bonus every year from 2015 to 2018, (PSAF Resp. ¶4), and Swanson recalled that Tao also received a bonus in 2019 based on her excellent performance, (*id.*; Dckt. #99-1 at 104).

### C. The Spread Auction Trader Program and Tao's Performance at Simplex in 2020

At the center of this case is Simplex's "Spread Auction Trading" ("SAT") program, which was a trading program initially coded by developer Matthew Eubank ("Eubank") and put into the market in 2019. (PSAF Resp. ¶7). The SAT program allowed Simplex to participate in auctions for stock options and futures. (*Id.*). The parties dispute who managed the SAT program— Simplex argues that Tao supervised the program, (DSOF Resp. ¶31), whereas Tao states she was simply a member of a team of traders that helped maintain the SAT, (PSAF Resp. ¶7).

In July 2020, David Haufe ("Haufe"), the head of developers, was "spinning up" a "new line of business" which interacted with the SAT, prompting him to look into the program. (Dckt. #99-3 at 25–26). Upon review, he concluded that it was generating fewer trades than he expected. (*Id.*). Haufe reported his finding to Zimmerman, who had independently observed that the SAT's profitability was not improving as expected. (DSOF Resp. ¶31). The SAT was, nevertheless, "a net positive" for Simplex, (Dckt. #99-1 at 240)—that is, it was making money, (*id.* at 34).

In August 2020, shortly after Haufe's observations, Tao requested a change to the SAT program, which required a change in coding. (PSAF ¶8). Eubank, the developer who wrote the code for the initial SAT, was no longer assigned to that program so the task fell to a different developer, Alex Meyer ("Meyer"), who edited the code to account for Tao's strategy changes. (*Id.*). According to Tao, however, Meyer incorrectly coded certain fees for the auctions in "dollar terms" as opposed to "option terms." (*Id.* ¶9).

Neither Zimmerman nor Swanson was aware of the error at the time they conducted Tao's annual review in late December 2020.  (Dckt. #99-1 at 238, 245); (PSAF Resp. ¶10).  Zimmerman viewed Tao's performance in 2020 as "adequate."  (DSOF Resp. ¶21).  Swanson characterized it as "fine," but weaker than it had been in the past, and noted that several performance issues had arisen in 2020 that concerned him.  (*Id*.).  For example, in February 2020, Zimmerman exchanged messages with a colleague where Zimmerman expressed that he "need[ed] to have a talk with [Tao] about the importance of getting something into production."  (*Id*. ¶23).  Tao avers that Zimmerman never raised a performance issue with her regarding the concerns he expressed in the chat.  (Dckt. #99-2 at 41).  In other chats over the course of 2020, Zimmerman and/or Swanson indicated that it was "not great that [Tao was] not moving it forward," (DSOF Resp. ¶24), Tao was struggling with "effective project management," (*id.* ¶25), and there were "failures in terms of understanding market structure and system deisgn [*sic*] that [needed] to be addressed," (*id.*).  Tao again avers that neither Zimmerman nor Swanson raised any performance issues contemporaneously or in her 2020 year-end review.  (Dckt. #99-2 at 41).  Despite their differing views on Tao's performance, the parties agree that at the time of her December 2020 review she was "in line" to receive a year-end bonus.  (PSAF Resp. ¶4).  Tao also notes that shortly before her review, she had informed Zimmerman that she had undergone fertility treatments.  (DSOF Resp. ¶51).

A few weeks after Tao's review, in January 2021, Eubank was making changes to the SAT's code at Tao's request, (DSOF Resp. ¶32), when he noticed "something suspicious about the prices," (Dckt. #99-2 at 178), and notified Zimmerman, (DSOF Resp. ¶32).  Ultimately, Eubank determined that the SAT was applying fees at 100 times the proper size.  (Dckt. #99-2 at 175).  This error caused the SAT algorithm to overestimate each transaction cost, (Dckt. #99-1 at

246), and as a result, prevented the SAT "from trading a lot of good opportunities," (*id*. at 127). Simplex did not calculate the negative effect caused by the SAT coding error until well into this litigation. (PSAF Resp. ¶15). The calculated opportunity cost caused by the error was $1,097,800. (DSOF Resp. ¶39).[2]

### D. Meetings Following Discovery of the SAT Error and Tao's Termination

On January 25, 2021, Swanson and Zimmerman met with Tao to discuss the SAT trading error. (DSOF Resp. ¶40). The parties dispute exactly what was discussed, but agree that Tao was not terminated at this meeting. (*Compare* DSOF Resp. ¶40 *with* PSAF Resp. ¶15).

Following the January 2021 meeting, Zimmerman conducted a review of Tao's work and discovered additional errors, (DSOF Resp. ¶41), specifically "places where she had been careless[,] not paid attention to detail[,]" or "neglected" strategies. (Dckt. #99-1 at 124). Based on Tao's performance history, lack of attention to detail, and the SAT error, Zimmerman recommended to Swanson that Tao was not in a position to contribute to Simplex going forward, (*id.*), and based on Zimmerman's input, Swanson decided to terminate Tao's employment, (DSOF Resp. ¶42). Swanson terminated Tao on February 8, 2021, (*id.*), the day before other traders at Simplex were informed of the amount of their annual earned bonuses for 2020, (PSAF Resp. ¶17). Although the parties do not dispute that Simplex terminated Tao, Simplex later reported on a mandatory "U-5 Uniform Termination Notice" ("Form U-5") to the Financial Industry Regulatory Authority ("FINRA") that Tao's termination was voluntary, rather than performance-related. (PSAF Resp. ¶19). At the time of her termination, Tao was still the only

---

[2] Tao attempts to dispute this error by arguing that (1) it only caused $3,200 in *lost profits*, as opposed to over a million dollars in *opportunity costs*; (2) Simplex did not calculate the lost opportunity costs until after her termination; and (3) the error did not cause Simplex to enter into any trades at a loss. (DSOF Resp. ¶39). These facts do not properly dispute the opportunity cost figure calculated by Simplex, therefore this fact is deemed admitted.

female Chinese-American trader at Simplex.  (DSOF Resp. ¶4).

## III.    DISCUSSION

Under Title VII, an employer may not "discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ."  42 U.S.C. §2000e-2(a)(1).  One way of proving employment discrimination under Title VII[3] is the approach set out in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).  Under *Ortiz*, a plaintiff may "prove discrimination in a holistic fashion" by presenting all direct and indirect evidence together "as a whole."  *Ortiz*, 834 F.3d at 765.  Thus, a court considers whether a reasonable jury could find "an overall likelihood of discrimination" without analyzing direct and circumstantial evidence separately, not "asking whether any particular piece of evidence proves the case by itself."  *Ortiz*, 834 F.3d at 763.

*Ortiz* supplements, rather than supplants, the well-known burden-shifting framework for discrimination claims set out by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 793 (1973).  In other words, the *McDonnell Douglas* analysis is an alternative method by which a plaintiff can establish a prima facie case of discrimination.  The *McDonnell Douglas* test allows a plaintiff to forestall summary judgment if she adduces evidence showing that she is a "(1) member[] of a protected class; (2) performed reasonably on the job in accord with [her] employer['s] legitimate expectations; (3) w[as] subjected to an adverse employment action despite [her] reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer."  *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894–95 (7th Cir. 2018).  The burden then shifts to defendant to

---

[3] The Court notes that the same legal standard applies to discrimination claims under Title VII and the IHRA.  *See, e.g.*, *Gamble v. Cook Cnty.*, 106 F.4th 622, 625 (7th Cir. 2024) (citing cases).

produce a legitimate, non-discriminatory reason for plaintiff's termination. *Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, 826 (7th Cir. 2025) (cleaned up). If defendant produces such a rationale to rebut plaintiff's prima facie case, the burden then shifts back to plaintiff to show that defendant's reasons are false and only a pretext for discrimination. *Id*.

Here, the parties organize their arguments under the *McDonnell Douglas* framework, so the Court will conduct its initial analysis as to whether plaintiff has established a prima facie case of discrimination within that approach. *See Davis v. Bd. of Trs. of Cmty Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (explaining that a court will conduct the *McDonnell Douglas* analysis if the parties present arguments "in those terms"); *Coleman v. Soo Line R.R. Co. d/b/a/ Canadian Pac. Ry.*, No. 22-CV-00016, 2026 WL 395687, at *4 (N.D.Ill. Feb. 12, 2026). The Court will then review the record holistically, asking whether it permits a reasonable factfinder to conclude that Simplex terminated Tao because she was female and Chinese-American. *See Ortiz*, 834 F.3d at 765.

### A. Plaintiff Has Not Put Forth Evidence to Raise a Genuine Issue of Material Fact as to Whether She has Established a Prima Facie Case Under the *McDonnell Douglas* Framework

Turning first to the *McDonnell Douglas* framework, the parties do not dispute that plaintiff, a Chinese-American woman, is a member of a protected class. They also agree that Tao's termination in February 2021 constituted an adverse employment action under Title VII. The Court therefore limits its inquiry to the parties' dispute as to whether Tao met Simplex's legitimate job expectations and whether Simplex treated similarly situated male and non-Chinese employees more favorably.

11

1. **Plaintiff Has Not Put Forth Evidence That Gives Rise to a Genuine Issue of Fact as to Whether She Met Simplex's Legitimate Job Expectations**

"To survive an employer's summary judgment motion on [discrimination] claims, an employee's job performance must meet the employer's legitimate expectations." *Thomas v. Chicago Tchrs.' Pension Fund*, No. 25-1623, 2026 WL 165448, at *4 (7th Cir. Jan. 21, 2026). Whether plaintiff met defendant's legitimate expectations focuses on whether she met defendant's expectations "*at the time she was fired.*" *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) (emphasis in original); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007). Simplex points to the SAT error and the errors discovered during Zimmerman's review as evidence that Tao cannot demonstrate that she was meeting Simplex's reasonable job expectations at the time of her termination.[4]

Tao offers several unpersuasive counterarguments in response. She first argues that there is a genuine issue of fact as to whether she was meeting Simplex's legitimate job expectations because (1) Simplex awarded her a bonus from 2015 to 2019; (2)she had no documented performance issues; and (3) at the time of her December 2020 review, Simplex believed she was "in line" to receive a bonus. But Tao's prior positive performance reviews and receipt of bonuses do not give rise to a genuine issue of fact that she was meeting Simplex's work expectations "*at the time of [her] termination*" in February 2021. *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (emphasis added). Importantly, here, the performance reviews and bonuses Tao references—both of which Simplex cites as contributing to her termination— were all conducted or paid *before* Simplex learned of the SAT error and *before* Zimmerman

---

[4] Tao objects to the extent that Simplex relies on performance issues it discovered even after her termination to justify its decision to discharge her. (Dckt. #98 at 10). For purposes of this analysis, the Court focuses only on errors identified by Simplex *prior* to Tao's termination on February 8, 2021.

12

conducted his review discovering additional errors with Tao's work—. Unlike in the cases cited by Tao, where evidence demonstrating the plaintiffs' history of strong performance *coupled with* positive treatment by their employer at the time of their termination raised a genuine issue of material fact as to whether they were meeting the employers' legitimate expectations, (*see* Dckt. #98 citing *Wohl v. Spectrum Mfg.*, 94 F.3d 353, 358 (7th Cir. 1996) and *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999)), Tao's exclusive reliance on performance evaluations and bonuses that predate the relevant period does not bar summary judgment. *Mehrberg v. Illinois Dep't of Com. & Econ. Opportunity*, No. 18-CV-02032, 2022 WL 19321, at 86 (N.D.Ill. Jan. 3, 2022) (finding no disputed issue of fact as to whether plaintiff met her employer's legitimate job expectations where plaintiff relied on positive performance reviews which predated the relevant period); *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("The record indicates that Mr. Fortier had received positive performance evaluations in the years prior to Aguiña–Tudela's negative evaluation; we must keep in mind, however, that the relevant time to consider is the time of discharge.").

Tao's next argument—that Simplex's failure to contemporaneously document its concerns with her performance gives rise to a genuine issue of fact—likewise does not pass muster. Contrary to Tao's assertions, Simplex produced several contemporaneous records of its concerns with Tao's performance, including Zimmerman's chats in 2020. (DSOF Resp. ¶¶23–24). Whether Tao agrees with Simplex's critiques regarding her performance, whether Simplex's concerns were contemporaneously shared with Tao, and whether these records were presented in a formal capacity is immaterial to the issue of whether Simplex believed that Tao was meeting its legitimate expectations at the time of her termination. *See, e.g.*, *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007) ("[w]hether Fane had notice of her transgressions, whether

13

termination was an extreme response to them, and whether Locke Reynolds followed its own progressive disciplinary procedures are irrelevant to the issue of whether Fane was meeting the firm's legitimate expectations.").

Tao further argues, without citing any authority, that the discrepancy between Simplex's stated reason for terminating her (poor job performance) and the reason stated on the Form U5 that is submitted to FINRA (that Tao left voluntarily) precludes summary judgment. But Tao does not dispute that she was terminated, and whether or not Simplex accurately reported Tao's termination to FINRA again does not bear on whether she was meeting Simplex's work expectations at the time of her termination.

Finally, Tao argues that Simplex cannot rely on the errors discovered by Zimmerman during his review to demonstrate that Tao was not meeting its job expectations because other traders at Simplex made similar errors, but were not terminated as a result. This is inaccurate. Although Tao states that errors like the one in the SAT—that is, errors in coding—are commonplace, (PSAF Resp. ¶¶22–23), she does not argue the same about the errors of carelessness, neglecting strategies, and failing to pay attention that Zimmerman discovered in his review. It is these errors, in addition to the SAT error, that Simplex argues supported Tao's termination, and this Court does not sit as a "super-personnel department," second-guessing an employer's legitimate concerns about an employee's performance. *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012). Thus, Tao has failed to present sufficient evidence to raise a genuine issue of material fact as to whether her performance was meeting Simplex's legitimate job expectations at the time she was terminated.

14

2.     **Plaintiff Has Not Put Forth Evidence That Gives Rise to a Genuine Issue of Fact as to Whether Simplex Treated Similarly Situated Male, Non-Asian Employees More Favorably**

Tao also cannot make a *prima facie* showing of discrimination because she fails to provide sufficient evidence that Simplex treated a similarly situated individual not in the protected class more favorably.  "Similarly situated means 'directly comparable' in all material respects."  *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018), *quoting Reed v. Freedom Mortg.*, 869 F.3d 543, 549 (7th Cir. 2017)).  "The objective is to eliminate other possible explanatory variables such as differing roles, performance histories, or decision-making personnel, in order to isolate the critical independent variable of discriminatory animus."  *Reed*, 869 F.3d at 549.  Tao identifies six other non-Chinese and male employees—namely, Dave Harrison, Colin Batko, Dimitry Braznichenko, Luke Potter, Rich Yoon, and Zimmerman—that she argues were similarly situated and whose employment Simplex did not terminate.  But each of these proposed comparators is unsuitable for various reasons (and some for several reasons).

First, Zimmerman was not similarly situated to Tao because he was her supervisor.  *See, e.g.*, *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018); *Shirk v. Trustees of Indiana University*, 167 F.4th 460, 468 (7th Cir. 2026) ("Where, as here, the plaintiff is subordinate to an alleged comparator, the two are not similarly situated.") (cleaned up).  Second, Tao has not put forth evidence that either Swanson or Zimmerman was aware of the alleged errors committed by Batko, Braznichenko, or Potter.  *See Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 263 (7th Cir. 2014) ("Without . . . evidence [that any supervisor was aware of the comparator's conduct], [plaintiff] cannot defeat summary judgment.").  Third, Tao has not put forth evidence that her proposed comparators, especially Yoon, made mistakes with the same severity or frequency as her.  *Miljkovic v. Univ. Anesthesiologists, S.C.*, 68 F.Supp.3d 884 (N.D.Ill. 2014) (granting

summary judgment where plaintiff failed to provide evidence that a proposed comparator made billing mistakes "or, if she did, that these mistakes rose to the same level as plaintiff's."). Plaintiff asserts that Yoon made "errors" that ran for months. (Dckt. #98 at 14). But her assertions are not supported by the evidence, which indicates that Yoon made one error, and that the reference to "nine months" was to the temporal period of the trading strategy and not to the duration of Yoon's alleged error. (PSAF Resp. ¶28). Finally, Tao has not put forth evidence that Harrison, Batko, or Braznichenko had the same supervisor as her. *See, e.g.*, *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000), *overruled on other grounds by Ortiz*, 834 F.3d 760 (noting that when "different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects.") (cleaned up); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

### 3. Tao Has Failed to Raise a Genuine Issue of Material Fact as to Whether Simplex's Proffered Reason for Terminating Her Was Pretextual

Even if she had presented sufficient evidence to support her *prima facie* case, Tao has failed to present sufficient evidence that would allow a reasonable jury to find that Simplex's stated reason for terminating her was pretextual. To show pretext, a plaintiff must present evidence that the employer's proffered explanation against the *prima facie* showing of discrimination is "[a] lie, specifically a phony reason for some action, not just faulty reasoning or mistaken judgment on the part of the employer." *Bragg v. Munster Med. Rsch. Found., Inc.*, 58 F.4th 265, 273 (7th Cir. 2023) (cleaned up). In considering whether Simplex's articulated reason was pretextual, the Court does "not evaluate whether the employer's proffered justification was accurate or even whether it was unfair." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378

16

(7th Cir. 2020). Instead, the "sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Id.*

Tao identifies several pieces of evidence she claims demonstrate that Simplex's stated reason for terminating her was pretext, including (1) her belief that she met Simplex's legitimate expectations; (2) her assertion that there was no written documentation of her poor performance; (3) the fact that she generated profits for Simplex; (4) that coding errors were "commonplace;" (5) her belief that similarly situated male, non-Chinese individuals were treated more favorably; (6) her assertion that the SAT error was not otherwise her fault; and (7) the fact that Simplex consulted with its human resources director after discovering the SAT issue, despite the fact that he had never been previously consulted about trader performance issues.

Several of these arguments are unavailing because the Court has already determined that: (1) Tao has failed to produce sufficient evidence to create an issue of fact as to whether she was meeting Simplex's legitimate expectations at the time of her termination; (2) there was contemporaneous documentation of her poor performance; (3) Tao has not identified comparators who are similarly situated to her; and (4) Tao has not identified similarly situated comparators. Tao's remaining arguments simply dispute the significance of her mistakes, whether she is to blame for the SAT error, and the wisdom of Simplex's actions. However, Tao's disagreements with Simplex's conclusions or the manner in which Simplex conducted its business likewise do not support a finding of pretext because this Court does not sit as a "super-personnel department" determining "whether an employer's expectations were fair, prudent, or reasonable." *Paterakos v. City of Chicago*, 147 F.4th 787 (7th Cir. 2025), *quoting Boss*, 816 F.3d at 917. Instead, Tao must put forth evidence on which a reasonable jury could find that Simplex's asserted justifications for firing her—the SAT error and her history of mistakes and

17

inattentiveness—however unfair or inaccurate, were insincere.  *See, e.g.*, *Brill v. Lante Corp.*, 119 F.3d 1266, 1273 (7th Cir.1997) ("the question is not whether the [employer's performance] ratings were right but whether the employer's description of its reasons is honest").  She has not done so.

Tao also contends that Simplex's articulated reason for firing her is pretextual because the Form U5 that Simplex filed with FINRA indicated that she left voluntarily.  Although "[s]hifting and inconsistent explanations can provide a basis for a finding of pretext," *McCann v. Badger Mining Corp.*, 965 F.3d 578, 589–90 (7th Cir. 2020), Tao does not dispute that she was, in fact, terminated.  Tao has cited no authority to support the proposition that an employer's submission of a form to a third-party regulatory agency indicating that an employee's separation was voluntary when both the employer and employee agree that the employee's separation was involuntary is sufficient evidence to create an issue of fact on pretext.  *See Greene v. Illinois Sec'y of State*, No. 23 C 2182, 2025 WL 3268678, at *8 (N.D.Ill. Nov. 24, 2025) ("This single shift in the Secretary's explanation arguably may not be sufficient by itself to show pretext.").  This is particularly true where (as here) the employer made the alleged inconsistent statement to the third party in an effort to *benefit* the terminated employee's career.[5]

In a final attempt to establish pretext, Tao cites evidence that she was fired in February 2021 after she informed Zimmerman about her fertility treatment in December 2020 and that she was fired one day before bonuses were announced.  While suspicious timing can be circumstantial evidence of discrimination, *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 628 (7th Cir. 2001), the evidence cited by Tao does not raise an inference of discrimination.  To begin,

---

[5] Here, Simplex's chief compliance officer, Angela Lucas, testified that Simplex marked "voluntary" departure on Tao's U-5 form "because we d[idn't] want to hurt her chances of her getting a new job in the industry."  (Dckt. #99-3 at 252).

there was a "significant intervening event" (namely, Simplex's discovery of Tao's errors) that occurred after Tao gave notice of her fertility treatment and before her termination. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) ("[W]here a significant intervening event separate[es] an employee's protected activity from the adverse employment action he receives, a suspicious-timing argument will not prevail."). Similarly, there is nothing inherently suspicious about terminating Tao for unsatisfactory performance the day before bonuses were announced given that it is undisputed that Simplex was aware of her errors before it made the decision to terminate her. Surviving summary judgment through a showing of pretext requires much more than the conclusory allegations of suspicious timing that Tao offers. *Pugh*, 259 F.3d at 629 ("[T]iming alone does not create a genuine issue as to pretext if the plaintiff is unable to prove, through other circumstantial evidence, that he was terminated for a reason other than that proffered by the employer.").

> **B.      Plaintiff Has Not Put Forth Evidence to Raise a Genuine Issue of Fact Under the *Ortiz* Holistic Approach**

Although the parties do not present their evidence under *Ortiz*, the Court must still consider Tao's evidence cumulatively and determine whether the record would permit "a reasonable factfinder to conclude" that Tao's gender and or race/national origin "caused the discharge or other adverse employment action." 892 F.3d at 765. The Seventh Circuit has "identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Community Sch.*, 953 F.3d 923, 929 (7th Cir. 2020). This record, considered as a whole, does not permit such a conclusion.

19

Even under *Ortiz*, Tao has not identified any proper comparator or any statement from Simplex suggesting discriminatory intent, and there is nothing inherently suspicious about Simplex terminating Tao after discovering errors in the SAT and a history of carelessness and inattention to detail. Nor has Tao put forth evidence that Simplex's stated reason for termination was pretextual. Where (as here) a plaintiff has failed to present sufficient evidence to assert a *prima facie* case under *McDonnell Douglas*, it is not uncommon for the plaintiff's claim to likewise fail under the *Ortiz* holistic approach. *See, e.g.*, *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th Cir. 2025) (citing cases).

In sum: the record contains insufficient evidence that would allow a reasonable factfinder to find that Tao's gender or race/national origin played a role in Simplex's decision to terminate her employment. Consequently, Simplex is entitled to summary judgment on Tao's Title VII and IHRA claims.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment, (Dckt. #79), is granted. All pending deadlines and hearings are stricken. Civil case terminated.

**DATE: March 9, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**

20